TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00732-CR






Frederick Riley Abbott, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 60071, HONORABLE RICK MORRIS, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


On November 14, 2006, a Bell County jury convicted appellant Frederick Riley
Abbott of aggravated sexual assault of a child, a first-degree felony. See Tex. Penal Code Ann.
§§ 22.021(a)(1)(B), (a)(2)(B), (b)(1), (e), 22.011(c)(1) (West Supp. 2006). At punishment, after
Abbott pleaded true to two enhancement paragraphs in the indictment, the jury sentenced him to life
imprisonment and fined him $10,000, the maximum punishment. See id. § 12.32 (West 2003). In
his sole point of error, Abbott argues that the evidence presented at his trial is factually insufficient
to support his conviction. We will affirm the judgment of the trial court.


BACKGROUND

At the time of the incident, the complainant S.L. was seven years old and was living
with her mother Janelle (1) and her three sisters. Janelle had just separated from S.L.'s father, William,
and had started a sexual relationship with Abbott, William's half-brother. William was in the
process of moving to live with his mother, Charlotte, (2) at her home in Brookfield Mobile Home Park
in Killeen. Abbott's home was a trailer in the same trailer park. On June 23, 2006, Janelle visited
Abbott at his home, bringing S.L. and her three other daughters with her. They all spent the night
there, with Abbott and Janelle sleeping in Abbott's room and the daughters sleeping in the room
normally occupied by Abbott's roommate Mark Bruyette. William was also present in Abbott's
trailer that evening, which was a common occurrence. William and Bruyette slept in
Abbott's living room.

The next morning, Abbott and Janelle got into an argument about who would feed
the children. At the time Abbott was shirtless and wearing black shorts and was drinking a forty-ounce bottle of malt liquor. After the argument Janelle went to lie down, complaining of a headache,
so William fed the children himself and then went to check on Janelle. When William returned to
the living room, he noticed that both S.L. and Abbott were missing, prompting him to leave the other
children in Bruyette's care and go looking for S.L. and Abbott. William acted on Bruyette's advice
to check Charlotte's trailer, but was initially prevented from entering because the normally unlocked
trailer door was locked. William unlocked and entered the trailer and began to search for his
daughter and half-brother. When he entered one of the trailer's bedrooms, he encountered Abbott
naked on top of a person of significantly smaller stature. Abbott completely obscured the person
with the exception of the person's arms, which appeared to be the arms of a child. William testified
that while he could only see the person's arms, he assumed that Abbott was having sex with his
daughter S.L. William is an epileptic and was afraid that confronting Abbott would trigger a seizure. 
Because Abbott had not noticed him, William elected to get Janelle to help instead of confronting
Abbott. Upon arriving at Abbott's trailer, William stayed with the remaining children while Janelle
and Bruyette ran to Charlotte's trailer.

Janelle testified that when she entered Charlotte's trailer, she found Abbott standing
in the hall outside the bathroom. S.L. was inside the bathroom seated on the toilet. No other persons
were in the trailer. S.L. told Janelle that her bottom hurt. Janelle noticed what appeared to be dish
soap discharge "with other stuff mixed in" on S.L.'s bottom. Janelle told S.L. not to wipe and took
her outside of the trailer. A friend called the police, who were quickly dispatched.

Upon arriving at the scene, one of the officers noticed a man without a shirt, wearing
black shorts, and carrying a forty-ounce bottle of malt liquor walking away from the location and
disappearing behind other trailers. A crowd had meanwhile gathered around Charlotte's trailer. 
Janelle brought S.L. to the officer. S.L. told the officer that her bottom hurt. The officer called for
an ambulance, which took S.L. to a nearby hospital, with Janelle accompanying her. The officer then
interviewed William and took a statement. The officer learned that the suspect was the person he
had seen walking away from the location bare-chested in black shorts and advised other officers of
Abbott's location. At trial, the officer identified the suspect as Abbott.

Upon S.L.'s arrival at the hospital, Lori Talbott, a sexual assault nurse examiner,
examined S.L. Talbott testified at trial to the results of that examination. Talbott found a 2.5-millimeter anal tear, which she testified would be extremely painful to S.L. and was consistent with
anal penetration. Talbott also found the tissue surrounding S.L.'s hymen to be red and tender. When
Talbott questioned S.L., S.L. stated that "Uncle Fred" put his "thingy" on her "booty" and her
"peepee," that he had been hitting her, and that he had done this since January "at his house and
Grandma's." During the exam, Talbott showed S.L. a diagram of a female child's body to determine
what words S.L. used to identify various body parts; S.L. called the anal area "booty" and the vaginal
area "peepee." When asked what the penis is called, S.L. responded "thingy." The examination was
consistent, in Talbott's opinion, with the history of events that S.L. related to her. 

At trial, Talbott testified that passing hard stool could possibly cause a tear similar
to the 2.5-millimeter one found during her examination of S.L. However, Talbott further testified
that S.L. told her that she had not defecated that day and that Talbott had indicated that fact on the
examination report admitted into evidence. 

S.L. testified at trial and said that Abbott hurt her, that he took her clothes off, and
that he put his "thingy" in her "booty" while on top of her. She identified Abbott during the trial. 
S.L. also corroborated Talbott's testimony about the words she used when referring to private parts. 
She testified that she was scared, and when questioned by counsel about what frightened her, she
pointed directly at Abbott. Both Janelle and William testified to S.L.'s change in behavior after the
incident, noting that it had turned particularly negative toward Abbott and that her personality had
generally gone from spunky to downtrodden.

Charlotte, the mother of both William and Abbott, testified at trial that she had
spoken to Abbott about the incident with S.L. while he was in jail. According to Charlotte, she
asked Abbott if he had sexually assaulted S.L. and he responded, "Mommy, I don't remember."

Abbott attempted to advance a defense based on the fact that he and Janelle were in
a sexual relationship, suggesting that William, being the estranged husband, would have a motive
to fabricate his testimony to get revenge on Abbott. Abbott questioned William extensively about
his knowledge of the sexual relationship between Abbott and Janelle, including how and when he
found out about it. Abbott also attempted to emphasize on cross-examination that William often had
to sleep in the same trailer as Abbott and Janelle while they shared a bed. Abbott, however, was
unable to elicit any further evidence from the witnesses to support his theory beyond the fact that
William was aware of the sexual relationship between his wife and Abbott. On direct examination
by the State, William indicated that given the circumstances of his separation from Janelle, he did
not care that she was seeing his half-brother. 


DISCUSSION

Abbott argues on appeal that the evidence that was presented at the trial is factually
insufficient to support the jury's guilty verdict. Abbott contends that S.L.'s testimony was so
inconsistent that it was insufficient to allow a reasonable jury to find him guilty beyond a reasonable
doubt. He also urges that because the other witness to the alleged act, William, was not in a position
to positively identify the victim and gave a version of events too incredible to believe, his testimony
was insufficient to allow a reasonable jury to find him guilty beyond a reasonable doubt.

A factual-sufficiency review requires this Court to view all the evidence in a neutral
light, favorable to neither the verdict itself nor any of the parties, and to determine whether the
verdict is clearly wrong and unjust. Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000)
(quoting Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). To make this
determination, we must perform a two-part test. We first look at the evidence presented in support
of the guilty verdict and reverse only if the evidence "is so weak as to be clearly wrong and
manifestly unjust." Id. at 11. "This is the most equitable approach, especially given the fact criminal
defendants are not under any obligation to present evidence on their behalf and usually rely, instead,
on forcing the State to prove its case beyond a reasonable doubt." Id.

If the evidence that tends to prove the verdict is sufficient standing alone, we then
compare it with the evidence against the verdict, id. at 7, and reverse only if after the comparison the
verdict "is against the great weight and preponderance of the available evidence," id. at 11. This
portion of the test is applicable "in the event a defendant does muster contrary evidence," giving the
defendant a second ground for factual insufficiency. Id.

Appellate courts must always be mindful of the deference that we must give to the
jury's original determinations. The mere fact that an appellate court would have acquitted based on
the evidence does not mean that it can set aside the conviction. Watson v. State, 204 S.W.3d 404,
417 (Tex. Crim. App. 2006). An appellate court also cannot order a new trial simply because it
would have resolved an apparent conflict in the evidence differently than the jury. Id. Instead, the
"great weight and preponderance" of the record evidence must objectively contradict the jury's
verdict before an appellate court can grant a remand of the cause. Id. Additionally, an appellate
court must respect the jury's determinations of what weight to give conflicting testimonial evidence
"because resolution often turns on an evaluation of credibility and demeanor, and those jurors were
in attendance when the testimony was delivered," unlike the appellate court, who reviews a cold
record. Johnson, 23 S.W.3d at 8.


Evidence Supporting the Verdict

On appeal Abbott makes several attacks on the sufficiency of the State's evidence. 
Abbott first attacks the credibility of S.L.'s testimony because it is inconsistent with a prior statement
admitted into evidence. Specifically, S.L. testified at trial that Abbott put his "thingy in her booty,"
but Talbott testified that during her examination S.L. stated that Abbott put his "thingy on her
booty." (Emphases added.) The jury is the sole determiner of the weight and credibility given to
witness testimony. Johnson, 23 S.W.3d at 7 (citing Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim.
App. 1996)). We must defer to the jury's determinations of credibility unless the record clearly
indicates that a different result is appropriate, id. at 8, and this minor difference in S.L.'s statements
does not rise to such a level.

Abbott further attempts to discredit S.L. by claiming that S.L.'s parents erroneously
thought that he sexually assaulted S.L. and that S.L., being an impressionable child, was affected by
their anger and simply started repeating what she thought she was supposed to say. This is, at best,
another credibility argument. The jury seems to have considered S.L. to be a credible witness, and
nothing in the record clearly and objectively indicates that she was merely repeating
her parents' impressions.

Finally, Abbott attempts to discredit William's testimony. Specifically, Abbott argues
that William's testimony that he saw what he thought was his daughter being molested but did not
intervene is not believable. William did, however, offer an explanation at trial of why he did not
intervene, an explanation that seems to have been accepted by the jury. In an attempt to support his
assertion of incredibility, Abbott advances the theory that due to Abbott's sexual relationship with
William's wife, William had a motive to fabricate his testimony. This theory is not supported by the
record. While the record does show that Abbott was in a sexual relationship with Janelle, it also
shows that William regularly slept in the same dwelling as Abbott and Janelle without any evidence
of animosity toward either of them. In fact, the only domestic strife introduced in the record was
between Abbott and Janelle. Abbott failed at trial to elicit any testimony from William or any of the
other witnesses that William had a vendetta against Abbott. Thus, there is no record evidence
suggesting that William had any motive to fabricate his story.

A minor complainant's testimony is, by itself, factually sufficient to support a
conviction of aggravated sexual assault. (3) Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1)
(West 2005); Perez v. State, 113 S.W.3d 819, 837-38 (Tex. App.--Austin 2003, pet. ref'd). In this
case, not only did the minor complainant testify but other witnesses also corroborated S.L.'s
testimony. William testified that he witnessed Abbott naked on top of what appeared to be a child. 
Janelle testified that when she reached the trailer moments later, only two people were present--her
daughter S.L. and Abbott--and that S.L. said that her bottom hurt. Talbott testified that her
examination of S.L. revealed a 2.5-millimeter anal tear and red, tender flesh surrounding S.L.'s
hymen, trauma consistent with the sexual assault that S.L. reported to her. Janelle and William
further testified to the personality change of their daughter after these events. Even if we were to
agree with the credibility attacks that Abbott made toward his half-brother's testimony, the testimony
of Janelle and Talbott still corroborates S.L.'s testimony.

The jury appears to have determined that S.L.'s testimony was credible. Combining
that testimony with the corroborating physical and testimonial evidence, we cannot say that the
evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust.


Evidence Against the Verdict

Because the evidence supporting the verdict is sufficient standing alone, we must now
compare it with the evidence against the verdict. Evidence that goes against the verdict includes
Nurse Talbott's testimony that S.L. stated that Abbott put his "thingy on her booty" (4) and Talbott's
admission that the 2.5-millimeter anal tear could have possibly been caused by passing hard stool. 
Abbott would have us prefer this evidence over S.L.'s testimony that she was penetrated and
Talbott's testimony that S.L. did not defecate that day, but we are unable to do so as only the jury
can resolve apparent conflicts in the evidence. See Watson, 204 S.W.3d at 417. Abbott emphasizes
that Talbott's medical examination did not support S.L.'s statements during the examination that the
abuse had happened over a period of months or that Abbott had hit her. However, Talbott also
testified that her examination did not necessarily rule out a continuing course of abuse or the
possibility that Abbott had struck S.L. on the day of the examination. 

Abbott further attacks S.L.'s credibility on the basis of William's testimony that when
he initially asked S.L. about the incident, she told him that Abbott had not done anything to her and
that she only stated that Abbott had hurt her after William asked a second time a few moments later. 
However, S.L.'s credibility is bolstered by the consistent statements that she made to both her mother
and Nurse Talbott. The jury apparently found S.L. to be a credible witness, and we must defer to the
jury's determination because the record does not clearly indicate that a different result is appropriate. 
See Johnson, 23 S.W.3d at 8.

Upon review, the evidence against the verdict carries very little weight in light of the
entire body of evidence introduced at trial. After comparing the evidence against the verdict with
the significant quantity of record evidence in favor of the verdict, we conclude that the greater weight
and preponderance of the evidence clearly supports the verdict. In light of this conclusion, the
verdict must be upheld. See Watson, 204 S.W.3d at 417. 

Because the evidence in favor of the verdict is sufficient to convict by itself and
greatly outweighs the evidence against the verdict, we overrule Abbott's point of error.


CONCLUSION

With Abbott's only point of error overruled, we affirm the judgment of conviction.



 Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: August 28, 2007

Do Not Publish
1. We refer to S.L.'s immediate family members by their first names for convenience.
2. Charlotte is also Abbott's mother.
3. S.L. reported the sexual assault to someone else the same day that it occurred, well within
the year required for adult sexual assault victims. Because she was a child, though, she was not
bound by this requirement. See Tex. Code Crim. Proc. Ann. art. 38.07(b)(1) (West 2005).
4. While simple contact is sufficient to support a finding of aggravated sexual assault of a
child, see Tex. Penal Code Ann. § 22.021(a)(1)(B)(iv) (West Supp. 2006), the indictment against
Abbott charged penetration and did not include a charge of simple contact. Thus in this case, a
statement alleging contact but not alleging penetration would go against the verdict.